# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Two cellular devices currently in the custody of DEA- Milwaukee Office, see Attachment A

)
)
)
)
)
)

Case No. 19-911 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Two cellular devices currently in the custody of DEA- Milwaukee Office, see Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment B

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☒ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:

Relate to violations of 21 U.S.C. 841(a)(1), 846, 843(b)

The application is based on these facts: See attached affidavit.

☒ Delayed notice of _____ days (give exact ending date if more than 30 days: __04/07/2020__) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature
Joseph R. Slesar, Special Agent - DEA

_____
Printed Name and Title

Sworn to before me and signed in my presence:

Date: __August 26, 2019__

_____
Judge's signature

City and State: Milwaukee, Wisconsin                    Nancy Joseph, U.S. Magistrate Judge
                                                         Printed Name and Title

# AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

I, Joseph R. Slesar, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Special Agent with the United States Drug Enforcement Administration (DEA) and have been since June 2005. I am currently assigned to the Milwaukee, Wisconsin District Office. Prior to my assignment in Milwaukee, Wisconsin, I was previously assigned to DEA offices in Los Angeles, California (2005-2007), San Juan, Puerto Rico (2007-2010), Cartagena, Colombia (2010-2012), and San Juan, Puerto Rico (2012-2017). I have conducted investigations into the unlawful importation, possession with intent to distribute, and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 846, 952(a), and 963.

Through investigations and training, I am familiar with narcotics smuggling techniques, the types and amounts of profits made by drug dealers, and the methods, language, and terms, which are used to disguise the source and nature of the profits from their illegal activities.

3. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

4. The property to be searched is (1) **blue, LG cell phone, model LGMS210, bearing Sim# 8952020018220453098F and Serial# 709CYFT123475** (referred to herein as **"Target cell phone #1"**) and further described in Attachment A; and (1) **silver, LG cell phone, model LGMS210, bearing Sim# 8952020617220936075F and Serial #704VTVR273343** (referred to herein as **"Target cell phone #2"**) and further described in Attachment A. **Target cell phones #1 and #2** are currently stored within a DEA Milwaukee Office storage facility located at 4725 West Electric Avenue, West Milwaukee, Wisconsin 53219.

5. The applied-for warrant would authorize the forensic examination of the **target cell phones #1 and #2** for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

6. DEA has been conducting an ongoing investigation since April 2018 regarding the drug trafficking organization (DTO) run by Jose Carlos MORENO-CHAVEZ, AKA Jose ARIAS. Said DTO distributes multiple pounds of crystal methamphetamine and large amounts of heroin in Milwaukee, Wisconsin and surrounding areas.

7. MORENO-CHAVEZ, who was incarcerated in a Mexican prison until approximately October 2018, is known to utilize cell phones, Facebook, and WhatsApp applications to communicate with DTO members and clients. MORENO-CHAVEZ sends narcotics from Sinaloa, Mexico to the Los Angeles, California area. The narcotics are then secreted within gift packages, which may include chocolates or stuffed animals, and shipped to various distribution points within the United States, including Milwaukee, Wisconsin. Upon arrival for DTO members in the Milwaukee area, the narcotics are further distributed to buyers.

2

8. DEA Agents have made several recorded telephone calls to MORENO-CHAVEZ while he was a prisoner inside a Mexican prison, during which undercover agents discussed and organized subsequent undercover purchases of narcotics. DEA Agents have made several successful purchases of crystal methamphetamine and heroin from DTO members in the Milwaukee, WI area, which were organized via MORENO-CHAVEZ. DEA Special Agent Steven Wehr, while acting in an undercover capacity, made the following purchases of controlled substances from this DTO:

- 04-19-2018, purchased approximately 85.4 gross grams of suspected crystal methamphetamine from DTO members Gretchen ORRIOLS-MONTERO and Joel SALINAS-NATAL;

- 05-02-5018, purchased approximately 116.7 gross grams of suspected crystal methamphetamine from SALINAS-NATAL;

- 05-30-2018, purchased approximately 256.56 gross grams of suspected crystal methamphetamine from SALINAS-NATAL;

- 06-06-2018, purchased approximately 250.95 gross grams of suspected crystal methamphetamine from SALINAS-NATAL;

- 06-29-2018, purchased approximately 302.30 gross grams of suspected heroin from ORRIOLS-MONTERO and SALINAS-NATAL;

- 07-19-2018, purchased approximately 476.6 gross grams of suspected crystal methamphetamine from Felix ALOMAR-COTTO;

- 08-09-2018, purchased approximately 62.4 gross grams of suspected heroin from Beidangelys BERMUDEZ-RODRIGUEZ

3

9. A search warrant authorized on January 16, 2019 by the United States Magistrate Judge David E. Jones for the Facebook page utilized by MORENO-CHAVEZ verified MORENO-CHAVEZ's use of Facebook to facilitate the sale and shipment of crystal methamphetamine to Milwaukee, Wisconsin and surrounding areas.

10. Per a DEA source of information (SOI), MORENO-CHAVEZ was shot several times after gaining his release from prison. The targeted shooting occurred in approximately October 2018 outside MORENO-CHAVEZ's home in Sinaloa, Mexico. A short time after being shot, MORENO-CHAVEZ told the SOI to ensure his DTO telephones, which are **target cell phones #1 and #2**, did not end up in the custody of Mexican law enforcement while he was receiving treatment in a Mexican hospital. The SOI then safeguarded and secured **target cell phones #1 and #2**, per MORENO-CHAVEZ's request.

11. On August 2, 2019, the SOI spoke with SA Joseph Slesar of the DEA Milwaukee Office. The SOI stated that he/she was in possession of **target cell phones #1 and #2** and they were of high evidentiary value. The SOI stated **target cell phones #1 and #2** were used by MORENO-CHAVEZ to conduct DTO business and would include valuable information regarding DTO activities. The SOI stated that he/she was willing and able to send **target cell phones #1 and #2** to the DEA.

12. On August 12, 2019, the SOI sent **target cell phones #1 and #2** from Mexico to SA Slesar at the Milwaukee DEA Office (4725 West Electric Avenue, West Milwaukee, Wisconsin 53219) utilizing DHL shipping services.

13. On August 14, 2019, **target cell phones #1 and #2** were delivered by DHL to the DEA Milwaukee Office. On August 15, 2019, SA Slesar opened the package containing the **target cell phones #1 and #2** and then opened the back of the **target cell phones #1 and #2** only

4

to obtain the phones' identifying information that is printed on the manufacturer's sticker placed inside the phone beneath the back cover.

14. The SOI had previously provided actionable and valuable intelligence regarding the DTO to the DEA Mazatlán, Mexico Office, who in turn passed said information to the DEA Milwaukee Office. Said information has resulted in the identification of DTO members, as well as provided historical information regarding drug shipments sent by MORENO-CHAVEZ.

15. To date, both the **target cell phones #1 and #2** have remained in DEA custody at DEA Milwaukee Office's facility located at 4725 West Electric Avenue, West Milwaukee, Wisconsin 53219, but have not been analyzed for potential evidentiary value. In my training and experience, I know that the **target cell phones #1 and #2** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Device first came into the possession of the DEA.

16. Through my training and experience, discussions with investigators experienced in the operations of large-scale narcotics trafficking organizations, and interviews of defendants and informants, I have become familiar with the methods used by narcotics trafficking organizations to transport and distribute narcotics and narcotics proceeds. Based on this, I know the following:

17. Narcotics traffickers use multiple locations for residences and for the various functions of their narcotics trafficking operations. Multiple locations are often used to store narcotics, money, and/or narcotics related assets, and other locations are used to meet customers. The records related to these locations are kept by the narcotics traffickers at the locations they control and within portable electronic storage devices, which include cell phones. These records are often maintained for long periods of times.

5

18. Narcotics traffickers often conceal, in various locations, caches of narcotics, narcotics paraphernalia, jewelry, automobiles, automobile titles, deeds to property, and other items of value and/or proceeds of narcotics transactions and evidence of financial transactions relating to obtaining, transferring, secreting or spending large sums of money acquired from engaging in narcotics trafficking activities. Due to the long-term nature of these assets, narcotics traffickers tend to maintain the relevant records for long periods of time. These records are often maintained in hard-copy (paper) and/or electronic formats. Electronic records are often stored within electronic devices capable of storing electronic data, which includes cell phones.

19. Narcotics traffickers maintain, at locations they control (e.g., residences, storage locations, etc.), proceeds ledgers, supplier and customer lists, correspondence, notations, logs, receipts, journals, books, records and other documents containing information relating to narcotics manufacture, sales, storage, transportation and/or distribution. Large-scale narcotics trafficking organizations, like the above-described DTO, often maintain ledgers reflecting narcotics transactions and the collection of narcotics proceeds. Narcotics traffickers also maintain narcotics paraphernalia such as "cutting" materials, weighing devices, storage containers, and measuring devices which are used to facilitate the distribution of narcotics. All such documents, records and paraphernalia are normally maintained by narcotics traffickers for long periods of time. These records and/or photographic images of paraphernalia are also stored within electronic storage devices, including cell phones.

20. Narcotics traffickers maintain documents and indicia connected to their efforts to legitimize the cash received as proceeds from narcotics trafficking. These documents and indicia include statements from or relating to banks and/or other financial institutions, ledgers, bank books, account printouts, receipts, money orders, wire transfers, securities, travelers checks,

6

cashier's checks, stock certificates, bonds, certificates of deposit, and safety deposit boxes. All such documents, records and indicia are normally maintained by narcotics traffickers for long periods of time and are often maintained within electronic storage devices, which include cell phones.

21. Narcotics traffickers often place assets in names of relatives, close friends and associates to avoid detection of those assets by law enforcement. Although these assets are in another name, the narcotics trafficker maintains records, documents, and other indicia relating to the assets and continue to use the assets and exercise dominion and control over them. All such documents, records and indicia are normally maintained by narcotics traffickers for long periods of time and are often maintained within electronic storage devices, which include cell phones.

22. Narcotics traffickers often travel in conjunction with their illegal activities related to the purchase, distribution, transportation and storage of narcotics and/or narcotics proceeds. They also use various commercial services (e.g., United States Postal Service, private mail and parcel delivery services, bulk shippers, car rentals services, etc.) to their transport narcotics to/from areas of distribution and to transport narcotics proceeds from areas of distribution. All such documents, records and indicia are normally maintained by narcotics traffickers for long periods of time and are often maintained within electronic storage devices, which include cell phones.

23. Narcotics traffickers use various communication devices such as telephones, cellular telephones, pagers, facsimile machines, computers and other devices to facilitate narcotics trafficking. They also maintain records and other indicia related to or connected with these devices and their associates and individuals they contact as part of their illegal activities (e.g., telephone and address books, notebooks, planners, organizers, telephone number and

7

address lists, business cards, telephone bills and documents and indicia). All such documents, records and indicia are normally maintained by narcotics traffickers for long periods of time and are often maintained within electronic storage devices, which include cell phones..

24. Narcotics traffickers often possess photographs of themselves, their associates, their property, the narcotics they deal with and narcotics proceeds. They generally keep these photographs at a residence or other location they control and maintain the photographs for long periods of time. These images are often in digital format and kept within electronic storage devices, which include cell phones.

25. Narcotics traffickers often maintain weapons, including firearms such as pistols, rifles, automatic and semi-automatic weapons, and shotguns. These weapons are stored at locations controlled by the narcotics traffickers (residences, storage locations, etc.) and images of these weapons are often recorded in digital formats and kept within electronic storage devices, which include cell phones.

26. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing

8

names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio

9

a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

e. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal

10

computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

f. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

27. Based on my training, experience, and research, I know **target cell phones #1 and #2** have capabilities that allow it to serve as a wireless telephone, digital camera, portable

11

media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

29. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target cell phones #1 and #2** were used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on **target cell phones #1 and #2** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

12

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of **target cell phones #1 and #2** consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

31. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

13

## CONCLUSION

32. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **target cell phones #1 and #2** described in Attachment A to seek the items described in Attachment B.

## REQUEST FOR SEALING

33. It is respectfully requested that this Court issue an order sealing for 180 days or until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that, online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

14

# ATTACHMENT A
Property to be searched

### Target cell phone #1

Target cell phone #1 is described as (1) **blue, LG cell phone, model LGMS210, bearing Sim# 8952020018220453098F and Serial# 709CYFT123475**:



**Target cell phones #1** is currently stored within a DEA Milwaukee Office storage facility located at 4725 West Electric Avenue, West Milwaukee, Wisconsin 53219

### Target cell phone #2

Target cell phone #2 is described as (1) **silver, LG cell phone, model LGMS210, bearing Sim# 8952020617220936075F and Serial #704VTVR273343**:



**Target cell phones #2** is currently stored within a DEA Milwaukee Office storage facility located at 4725 West Electric Avenue, West Milwaukee, Wisconsin 53219.

This warrant authorizes the forensic examination of **target cell phones #1 and #2** for the purpose of identifying the electronically stored information described in Attachment B.

2

# ATTACHMENT B
## Items to be seized

1. All records on **target cell phones #1 and #2** described in Attachment A that relate to violations of 21 U.S.C. 841(a)(1), 846, 843(b), and involve Jose Carlos MORENO-CHAVEZ, AKA Jose ARIAS, and members and/or associates of his DTO, including:

    a. lists of customers and related identifying information;

    b. types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c. any information related to sources of drugs (including names, addresses, phone numbers, or any other identifying information);

    d. any information recording MORENO-CHAVEZ and/or DTO members' schedule or travel;

    e. all bank records, checks, credit card bills, account information, and other financial records;

    f. any information recording controlled substances, narcotics paraphernalia, scales, measuring devices, weighing devices, cutting agents and narcotics packaging materials;

    g. any information recording occupancy, residency or ownership of DTO locations, namely, utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, and escrow documents;

    h. any information recording firearms and firearms trafficking.

2. Evidence of user attribution showing who used or owned **target cell phones #1 and #2** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.